228 So.2d 850

**Cornell ROBINSON**

v.

**STATE.**

**8 Div. 37.**

Court of Criminal Appeals of Alabama.

Nov. 11, 1969.

Rehearing Denied Dec. 9, 1969.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

Robert S. Thomas, Scottsboro, for appellant.

CATES, Judge.

This appeal (transferred from the Supreme Court of Alabama) is from a conviction of robbery; the jury set punishment at 29 years in the penitentiary.

Because of Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, are we compelled to reverse the judgment below and snatch from society an otherwise merited conviction?

I

Robinson brutally beat Mrs. Christine Davis in the course of robbing her to empty the cash register at the Davises' Last Chance Grocery in Scottsboro December 13, 1967.

Sometime thereafter Robinson (and his co-indictee, Willie B. Martin) were put in a police lineup without counsel present. We quote Robinson's brief:

"Thereafter, on or about December 16, 1967, Officer Pell showed the pictures, including at least one photo of Cornell

Robinson to Mrs. Davis. On the same day a warrant of arrest was issued for Cornell Robinson charging him with robbery. Soon afterward Mrs. Davis went to the Scottsboro Police Department where she viewed a line-up. It is not clear how many people were in this line-up; however, at one time Mrs. Davis (R. p. 32) stated that she didn't notice any of them except the one picked out—Cornell Robinson."

## II

The State argues that Mrs. Davis's in-court identification was so firm as not to be linked with her recognizing Robinson and Martin in the police lineup. This contention stems from the answers to the last three questions put in her examination in chief:

"Q Now, your identification here in Court today is made from the times you saw him there in your store, is that correct?

"A Absolutely.

"Q And you are positive this is—

"A Yes, sir, that is him.

"Q That is one of them that robbed— Cornell Robinson is one that robbed —is one of the two?

"A Yes, sir."

However, we consider that after the defense brought out that Mrs. Davis picked Robinson out of a lineup at City Hall there was a shift of the burden of proceeding. As the majority opinion in Gilbert, supra, says:

"The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error. * * * However, * * * the record does not permit an informed judgment whether the in-court identifications * * * had an independent source. * * *"

In the case of instant concern, direct examination elicited an in-court identification. Nowhere in the transcript of evidence did the defense bring out that Mrs. Davis in making this in-court identification was stimulated by the defendant's being at the counsel table. For centuries the accused in England has been put in the dock. The defendant has to be some place in the courtroom. See People v. London, Cal.App., 78 Cal.Rptr. 848.

This lineup was held after June 12, 1967, the date Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 makes a terminus for the "totality" rule for confrontations and identification "parades" or line-ups.

We are, therefore, confronted with the rule of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert, supra. Hence, we must acknowledge at the outset that though there was an in-court identification during Mrs. Davis's examination in chief by the District Attorney, yet when she was put to cross examination, the defense quickly brought out that she had picked the defendant out of an identification parade of some sort.

No showing was made that there Robinson had counsel or waived the right to have counsel.

This lack of counsel, under our considered view, raises a *preliminary* hurdle for the State. The concomitant penalty of exclusion as to the in-court identification is the sanction for the *Wade* and *Gilbert* rule.

We have deliberately used "preliminary" because we consider that the opinions in *Wade* and *Gilbert* admit of an overcoming of the operation of the rule of exclusion. But the State must vindicate on the merits of its witness's identification.

■ After all, *Wade* was remanded and not rendered. In the directive Part V of the opinion we find:

"We come now to the question whether the denial of Wade's motion to strike * * * because of the absence of his counsel at the lineup required * * * the grant of a new trial * * *. We do not think this disposition can be justified without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification. See Murphy v. Waterfront Commission, 378 U.S. 52, 79, n. 18, 84 S.Ct. 1594, 12 L.Ed.2d 678. *Where, as here, the admissibility of evidence of the lineup identification itself is not involved, a per se rule of exclusion of courtroom identification would be unjustified.* See Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307. A rule limited solely to the exclusion of testimony concerning identification at the lineup itself, without regard to admissibility of the courtroom identification, would render the right to counsel an empty one. The lineup is most often used, as in the present case, to crystallize the witnesses' identification of the defendant for future reference. We have already noted that the lineup identification will have that effect. The State may then rest upon the witnesses' unequivocal courtroom identification, and not mention the pretrial identification as part of the State's case at trial. Counsel is then in the predicament in which Wade's counsel found himself—realizing that possible unfairness at the lineup may be the sole means of attack upon the unequivocal courtroom identification, and having to probe in the dark in an attempt to discover and reveal unfairness, while bolstering the government witness' courtroom identification by bringing out the dwelling upon his prior identification. Since counsel's presence at the lineup would equip him to attack not only the lineup identification but the courtroom identification as well, limiting the impact of violation of the right to counsel to exclusion of evidence only of identification at the lineup itself disregards a critical element of that right.

"We think it follows that the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441, 'Whether granting establishment of the primary illegality, the evidence to which instant objecton is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt 221 (1959). See also Hoffa v. United States, 385 U.S. 293, 309, 87 S.Ct. 408, 17 L.Ed.2d 374. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." (Italics added; footnotes omitted.)

Accordingly, we consider that the following criteria enunciated in *Wade* should be brought to bear against the instant record before we put the trial judge in error. These criteria are:

1. Prior opportunity to observe crime—corpus delicti;

2. Existence of discrepancy between prelineup description and actual description (does this mean actual description in lineup or actual description in court);

3. Identification prior to lineup of someone other than defendant;

4. Identification of defendant by picture before lineup;  ·

5. Failure to identify defendant on a prior occasion; and

6. Lapse of time between the crime and lineup identification.

Moreover, going down this list, we observe:

1. That Mrs. Davis had several prior opportunities to observe the defendant who, with his co-indictee, came into her store on at least ten occasions, all within five or six days before the robbery.

2. Defense counsel sought to bring out discrepant before and after descriptions but the most that we can gather from this record was that there was some question as to the degree of darkness of defendant's hair—in one instance the expression dark brown was used and another black.

3. There was no identification before lineup of anyone other than the defendant. Indeed, Mrs. Davis was unable to identify the defendant and his co-indictee from two color photographs which the police had taken. We have examined these photographs, which parenthetically are of the defect common to so many colored prints, i. e. they are blurred as to light and color.

5. There was no testimony that Mrs. Davis failed to identify Robinson in any prior lineup or confrontation.

6. The apparent testimony as to the lapse of time between the commission of the crime and the lineup was quite short. We note that in both *Wade* and *Gilbert* the *post-indictment* iden-

tifications were made after quite some interval of time following the commission of the crime.  ·

■ In general, we would comment that the identification of Robinson here, both in court and from prior recent instances of his coming into the Davis's store, coupled with the fact that another witness, Kathleen Gamble, saw a car which resembled one owned by him leaving the scene, is altogether less tainted than that held sufficient and legally valid in United States v. Broadhead, 7 Cir., 413 F.2d 1351.

It is perhaps unfortunate that the *Wade, Gilbert* and *Stovall* cases have left us with no instructions as how to accomplish identification either with or without counsel.

The administration of aseptic recognition by the police should be capable of being (and fairly so) done by the numbers [1] and not by resort to Duns Scotus or Kant's Prolegomena.

We believe that in the instant case the trial judge has complied with the test laid down en banc by the Court of Appeals for the District of Columbia in its majority opinion in Clemons v. United States, 408 F.2d 1230:

·"Where the prosecution intends to offer only an *in-court* identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process or the right to counsel. If a violation is found, the court should then decide whether the in-court identification is still admissible because it has an independent source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event. If the judge regards only

1. Wigmore, on Evidence (3d Ed.), § 786 A, refers to a royal commission report setting forth a Scotland Yard circular for identification parades. Perhaps pro-

cedure like that outlined there could avoid the pitfall which inheres in this newly created rule of exclusion.

the in-court identification as admissible, in the trial to the jury thereafter, the defense may, as a matter of trial tactics, decide to bring out the pre-trial confrontation itself, hoping that it can thus detract from the weight the jury might otherwise accord the in-court identification." (Italics added)

*Gilbert,* supra with *Wade* forms a chiaroscuro. Gilbert was posited on an outright rejection of the possibility of inadmissibility solely because of the absence of counsel at the pre-trial lineup. We quote:

"* * * after the first witness * * * identified Gilbert in the courtroom, defense counsel moved, out of the presence of the jury, to strike her testimony on the ground that she identified Gilbert at the pretrial lineup conducted in the absence of counsel in violation of the Sixth Amendment made applicable to the States by the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. He requested a hearing outside the presence of the jury to present evidence supporting his claim that her in-court identification was, and others to be elicited by the State from other eyewitnesses would be, 'predicated at least in large part upon their identification or purported identification of Mr. Gilbert at the showup. * * *' The trial judge denied the motion as premature. Defense counsel then elicited the fact of the cashier's lineup identification on cross-examination and again moved to strike her identification testimony. Without passing on the merits of the Sixth Amendment claim, the trial judge denied the motion on the ground that, assuming a violation, it would not in any event entitle Gilbert to suppression of the in-court identification. * * *.

"The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error. * * * However * * * the record does not permit an informed judgment whether the in-court identifications * * * had an independent source. * * *."

Although here *Gilbert* is distinguishable and *Wade* has not been disobeyed, the prosecution encountered another obstacle in its path to conviction: the rule governing the admissibility of out-of-court experiments.

An identification parade is a kind of empiric test of the eideticism vel non, of a witness's visual recall. Our Supreme Court has applied the principles of such experiments to out-of-court identification tests, e. g. Alabama G.S.R. Co. v. Burgess, 114 Ala. 587, 22 So. 169(4).

In this latter case we find:

"It became a question on the trial, how far from the place of injury (which was identified by testimony as being on or near the end of a certain trestle) these children could be seen on the track, and recognized as being children, from the direction the train came. The plaintiff's father was permitted to testify to an experiment made by him and others about a month after the injury. They placed the little boy (plaintiff) and one of witness' little girls, a size larger than the one that was killed, on the trestle, and left a boy 17 years old with them, and went down the track 700 yards, and from that point they could see objects on the trestle. They then walked toward them 200 yards, and stopped, and there saw the two children on the trestle; and the witness testified that he could tell that they were children a distance of 500 yards. * * *.

\* \* \* \* \* \*

"The writer was disposed to think the experiment, the evidence of which is objected to, could safely and properly be regarded as a practical method of shedding some legitimate light upon the inquiry whether or not these children, and the fact that they were children,

could have been discovered by the engineer in time to stop the train before reaching them by the exercise of due and reasonable care, leaving to the jury to consider such differences of conditions under which the injury and experiment occurred as the case may disclose, and to make due allowances for such differences; but, upon due consideration, we are of opinion that such evidence will not furnish, or aid in furnishing, a safe guide to the jury in the determination of the question whether the engineer exercised reasonable care to prevent the injury after he discovered the plaintiff's peril, or even before such discovery, if that were an issue in the cause. The conditions are too variant.—Tesney v. State, 77 Ala. 33. The physical and topographical facts surrounding the injury, and the place of the injury should be put before the jury, leaving them to draw just conclusions touching the issue."

Certainly this opinion recognizes that the trial judge had a duty on objection to rule as a matter of law whether the parade across the trestle was admissible. To a small degree, the writer of this opinion thinks the *Burgess* opinion has relevance here.

In this case we find no reversible error. See Grace v. State, 44 Ala.App. 682, 220 So.2d 259(4); State v. Allen, 251 La. 237, 203 So.2d 705. Rivers v. United States, 5 Cir., 400 F.2d 935 has more bark than bite.

We distinguish Jones v. State, 283 Ala. 221, 215 So.2d 437 as a case in which the in-court identification was so weak as to be without an independent source. Compare Hamlet v. State, Nev., 455 P.2d 915.

Having considered the entire record under Code 1940, T. 15, § 389, we conclude that the judgment of the Circuit Court is due to be

Affirmed.