243 So.2d 763

**William PRUITT, Alias**

v.

**STATE.**

**8 Div. 30.**

Court of Criminal Appeals of Alabama.

Oct. 20, 1970.

Rehearing Denied Nov. 11, 1970.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

Robert P. Schwenn, Dieter J. Schrader, Huntsville, for appellant.

CATES, Judge.

Grand Larceny: five years.

The only substantial claim of error is based on an out-of-court identification of Pruitt by Leonard Easterwood, the owner of a wallet. No counsel attended Pruitt.

The taking of the wallet and its contents of some $240.00 occurred late in the afternoon of July 4, 1968. The next day officers took the victim to Pruitt's house. The State's witnesses testified that the victim without any prompting, suggestion or interrogation said, "That's the man."

Pruitt, the only defense witness present at this encounter testified:

"Q  To your knowledge, did Mr. Stanley say anything to Mr. Easterwood when he brought you out to the car?

"A  Well, I am pretty sure that he asked Mr. Easterwood was I the man. But Mr. Easterwood had done said I was the man before he ever asked him that."

And on cross:

"Q  Now, at the time Mr. Easterwood was brought to your house, looked at you, and without anyone having said anything, he said, 'that's the man'?

"A  Yes, sir."

This testimony was contradictory of what Pruitt had testified in a pre-trial hearing:

"Q  What, if anything was said at that time and by whom?

"A  Pop asked Mr. Easterwood was this me, 'the fellow', and Mr. Easterwood said it was.

"Q  He said 'is this the fellow'?

"A  Yes.  And Pop said I was under arrest.  And he brought me and Earl Smithey, and Junior Edwards to jail down here.  And he questioned me and Earl and Junior Edwards, and they let us go back home."

However, at this earlier proceeding, Pruitt, on cross, testified:

"Q  How long did you wait out there at the car before Mr. Easterwood said, 'that's the man.'

"A  I got out there at the car and he said it was, 'him'.

"Q  He said, 'that's the man'?

"A  Yes.

"Q  Did he say that before Pop Stanley said anything?

"A  I don't remember if he did or not.

"Q  Well, you don't really remember whether Pop Stanley said, 'is that the man', do you?

"A  Yes, he said that.

"Q  But Mr. Easterwood may have said, 'that's the man', before he said anything?

"A  Yes."

Then on his redirect we find:

"Q  Mr. Pruitt, I understand your testimony that you don't recall whether Mr. Easterwood said, 'that's the man' first, or whether Officer Stanley said, 'is this the man' first?

"A  I don't know for sure if Mr. Easterwood said it before Pop asked him was I the man.

"Q  So you don't recall which spoke first then, either Officer Stanley or Mr. Easterwood?

"A  No, sir, I don't."

At this pre-trial hearing the State put Easterwood on the stand.  We quote, in part, from his testimony:

"Q  Now, have you subsequently to that time identified him in the court room somewhere after that July the 5th morning?

"A  Yes, in the court hearing in November, I believe it was.

"Q  All right.  Is the defendant in this case that has testified just a few minutes ago the man, William Pruitt, is that the one that you identified out there that day?

"A  That's right.

"Q  Is your identification here in this court today to this Judge based on this confrontation or meeting there on July the 5th solely, or is it based on the time that you had seen him before that day?

"A  I had never seen him to my knowledge before that day.

"Q  I mean on July the 4th is the first time you had seen him?

"A  Yes, sir.

"Q  All right.  Is your identification in this court room today of the defendant,

William Pruitt based on the identification that you made of him at his house, or the house he came out of, solely, or is it based on your having seen him partly on the day before this time?

"A   Well, I knew him from the day before when he robbed me.

"A   Then you are saying to the Court that your testimony here now, your identification of the defendant in the court room is not solely based upon your meeting him out there at his house on July the 5th?

"A   No, that didn't have anything to do with it, as far as identifying him.   Just by the time I laid my eyes on him, I knew him from the day before."

On cross we find:

"Q   I understand that, but it's your testimony that irregardless of your prior identification at his home, that any identification you make of him now, you make it independently of the fact that you had an occasion to see him at his home, and to ride in the car with him, and listen to him talk when he was singled out to you?

"*   *   *   *   *   *

"A   Well, put it this way, if I had never seen him from the time he got off me and I saw him when he robbed me, I would still say today that's him.

"Q   Without the other intervening—

"A   Without anything else.

"Q   And prior to him being brought out to the car, did either one of the police officers make any comment to you about who they were going to show you, or his name?

"A   Not to my knowledge, no."

In view of the positiveness of the in-court identification and the early confrontation after the crime, i. e. July 5 following July 4, we think there was no error under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 268, 87 S.Ct. 1951, 18 L.Ed.2d 1178; or Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. See Robinson, 45 Ala.App. 236, 228 So.2d 850.

We have carefully reviewed the whole record under Code 1940, T. 15, § 389 and consider that the judgment below is due to be

Affirmed.