267 So.2d 520

**David B. SHEWEY**

**v.**

**STATE.**

**4 Div. 101.**

Court of Criminal Appeals of Alabama.

Oct. 3, 1972.

G. A. Lindsey, Elba, for appellant.

William J. Baxley, Atty. Gen., and John A. Yung, IV, Asst. Atty. Gen., for the State.

ALMON, Judge.

Appellant was convicted of robbery and his punishment was fixed at ten years in the penitentiary.

Mary A. Tillis testified that on Saturday night, October 25, 1969, she was operating her grocery store and service station located on the New Brockton Highway in Coffee County; that a friend, Mrs. Dorothy Parrish, was in the store with her at the time; and that appellant came into the store armed with a twenty-two caliber automatic pistol and demanded her money. She stated that she went to the cash register and handed him the money, which consisted of $418.00 in cash and some checks.

Mrs. Tillis further testified that she first saw the appellant about fifteen or twenty minutes prior to the robbery when he came into the store and asked for directions to California. According to Mrs. Tillis on that occasion appellant stayed in the store for approximately ten or fifteen minutes during which time she conversed with him and was able to observe him in what she described as a well-lit store. Mrs. Tillis described his dress as brown pants, yellow shirt, and a yellow jacket. When he returned he had on a long dark green Army overcoat. After handing over the money Mrs. Tillis immediately notified the Enterprise police.

Mrs. Dorothy Parrish testified that she was present in the store when the robbery occurred. Her testimony was essentially the same as that of Mrs. Tillis.

Lt. Wade Cooper of the Enterprise Police Department testified that he was on duty on the night in question; that he and Sgt. Henderson were cruising in a patrol car when a bulletin came over their police ban radio that an armed robbery had taken place at Tillis Grocery on U. S. 84 between Enterprise and New Brockton. The officers proceeded to the scene and were there informed of the description of the suspect.

Shortly thereafter, Officers Cooper and Keene saw the appellant as he was coming out of "Marsh's Snooker Corner" on South Main Street in Enterprise. The appellant was immediately apprehended and placed under arrest by Officer Keene for robbery. At that time, and again at police headquarters, appellant was advised of his rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. This was stipulated by the appellant.

Appellant testified in his own behalf. He stated that he resided in Enterprise but

that at the time of the robbery he was in the United States Army stationed at Ft. Rucker, Alabama. He stated that at the time of his arrest he had on his person about $300.00 in cash which was part of some money his parents had given him when he left basic training at Ft. Leonardwood, Missouri, to come to Ft. Rucker.

It was his testimony that after requesting counsel and being without same, the police attempted to coerce him into making a confession by threatening to "tear up his car" in search of the money taken during the robbery and forced him to participate in a a lineup without counsel being present.

The State concedes that the appellant did not have counsel at the lineup.

Both Mrs. Tillis and Mrs. Parrish made in-court identifications of the accused. Timely objections by defense counsel were interposed to this testimony on the grounds that both witnesses had viewed the accused in a police lineup when the accused was not represented by counsel and that such lineup procedure formed the basis for the in-court identifications, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

▆▆ If it is established by clear and convincing evidence that the in-court idenfications were based upon observations of the suspect other than the lineup identification, then prior identification at lineup without counsel's presence does not constitute reversible error. See *Wade* and *Gilbert,* supra.[1]

The criteria to be considered in determining whether the in-court identifications were tainted by the lineup procedure, enumerated by the Supreme Court in *Wade* and followed by this court in Robinson v. State, 45 Ala.App. 236, 228 So.2d 850; Hardy v. State, 45 Ala.App. 632, 235 So.2d 677; Ross v. State, 46 Ala.App. 88, 238 So.2d 887; and Pruitt v. State, 46 Ala.App. 491, 243 So.2d 763, are set out as follows:

> " . . . Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. . . . "

Mrs. Tillis, the proprietor of Tillis Grocery, testified on voir dire as follows:

"Q. Mr. Lindsey asked you if based on your identification there at the police station if that was what you are basing your identification on today and you said that's right. How long was it after the robbery that you went to the police station and saw this lineup?

"A. Within an hour.

"Q. Within one hour. Can you put the identification—can you put the lineup out of your mind irregardless of any lineup, is this the man who robbed you on that occasion?

> Inasmuch as we are convinced that the accused received a fair trial and was accorded full due process under the more protective standards enunciated in *Wade* and *Gilbert,* supra, we need not here rely on *Kirby's* plurality holding. See also White v. State, 48 Ala.App. 334, 264 So.2d 565.

---

[1]. The logical application of the recent case of Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, decided June 7, 1972, in which a plurality of the Court held that the right to counsel does not attach until "the initiation of judicial criminal proceedings," would result in a finding by us that since appellant had not been "formally charged", his right to counsel had not attached at the time of the lineup.

"MR. LINDSEY: We object.

"THE COURT: Overruled.

"A. Yes.

"Q. (Mr. Stephens continuing) Irregardless of the lineup. And the lineup was conducted within an hour after the robbery, and irregardless of the lineup this is the man who robbed you?

"A. That's right.

"Q. All right, ma'am. Now, Mrs. Tillis, before—when you went to the police station, before you went into the place where this defendant and the other three individuals were did anybody tell you or suggest to you that this man was in the lineup or did they say go look and see if you see the man or what was said if you recall?

"A. They just said they had a lineup. They wanted us to identify and see if that was the boy.

"Q. See if that was the boy?

"A. That's right.

.    .    .    .    .    .

"Q. Did anybody suggest to you where he was if he was in there?

"A. No, they didn't.

"Q. Where he might be in the lineup?

"A. No, they didn't.

"Q. Did anybody talk to you in any way while you were in there looking at the lineup?

"A. No."

Examination on voir dire of Mrs. Dorothy Parrish, the other eyewitness to the robbery, revealed the following:

"Q. Mrs. Parrish, regardless of the lineup—let me ask you this: How long was it after he had been in there in the army coat and robbed the place was it before you viewed the lineup, in your best judgment?

"A. Well, it must have been at least an hour or maybe not quite that much. I don't

know, I was so scared until I couldn't remember time at that time anyway.

"Q. Somewhere in the neighborhood of an hour?

"A. I think so.

"Q. All right, ma'am, regardless of the lineup, if you can put it out of your mind, is this the man who robbed that store?

"MR. LINDSEY: We object to that, if the Court please.

"THE COURT: Overruled.

"MR. LINDSEY: We except.

"A. Yes.

"Q. (Mr. Stephens continuing) And without regard to the lineup you would know him and you recognize him as the person who robbed that store on that occasion regardless of the lineup?

"A. I would.

"MR. STEPHENS: All right."

And further:

"Q. Now, aside and apart from your viewing the man who robbed you, did the lineup—your seeing him in the lineup have anything to do with your identifying him here now?

"A. Well, the only thing, he looks—in the face he looks just like he did down there.

"Q. Well, I know, but does he look just like he did at the time of the robbery?

"A. Well, he has on his uniform now and he was dressed different.

"Q. But it's the same man?

"A. Yes, sir.

"Q. If you had never seen him in the lineup could you identify him here?

"A. I believe I could have.

"Q. Well, what I am trying to say is, did the lineup have anything to do in your mind with identifying him here?

"A. No, sir. I think I could have identified him anywhere, I believe I could.

"Q. As the same man?

"A. Yes, sir.

"Q. Did you tell me that you could identify him here regardless of whether you even had seen him in a lineup or not?

"A. I believe I could.

"Q. That is your opinion?

"A. Yes, sir.

"Q. In your opinion did the lineup have anything to do with your identifying him here?

"A. The lineup down there had anything?

"Q. Yes.

"A. No, sir.

"Q. You had seen him on two occasions an hour before?

"A. Yes, sir.

"Q. Did anyone point out anyone to you in there as being the subject?

"A. No, sir.

"Q. Just went in there and looked, and what did you do, you pointed out this man?

"A. Yes, sir."

Thus, in summary the record shows that: (1) both witnesses had a prior opportunity to observe the accused at close range, (2) both witnesses stated that they could have identified the appellant independent of the lineup, (3) there was no identification made prior to lineup of someone other than appellant, (4) there was no failure to identify the appellant on a prior occasion, and (5) the lapse of time between the commission of the crime and the lineup was quite short.

■ We, therefore, conclude that the evidence supports the trial judge's ruling that the failure of the appellant to have counsel at the lineup did not taint the witnesses' in-court identification so as to require their exclusion. Nor do we here find any violation of the court's holding in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

Appellant's second claim of error relates to the overruling of appellant's objection to the admission in evidence of an alleged confession by the accused to police officers after he had requested counsel and made known that he wished to make no statement until he had a lawyer.

There is a conflict in the testimony as to whether appellant actually confessed. He maintains that he never admitted any knowledge of the crime, yet at the same time contends that the police officers attempted to coerce a confession from him by threatening to "tear up his car" if he did not reveal the whereabouts of the stolen money. He further testified that he was frightened because of the large sum of money on his person at the time of his arrest, which he thought would arouse suspicion, and admitted telling the police officers that, "If you want to tear a car apart why don't you try looking in your own car." Thus, implying to the police that he had stashed the money in the back seat of the police vehicle which brought him to the station. A search of the police vehicle revealed $418.00 in cash, the exact amount taken from Tillis Grocery.

The officers' version establishes clearly that the appellant was advised of his *Miranda* rights. This aspect of the officers' statement was agreed to by the appellant but it is the appellant's position that after advising the officers that he wished to remain silent until he could consult with an attorney, it was only as a result of the officers' threat to tear up his vehicle that he made the alleged statement. The officers' version is that they never interrogated or questioned the appellant.

Officer Cooper, who was present at the time the statement was allegedly made, testified as follows:

"Q. When you arrived at the police department what did you do with him as far

as the automobile and the police car you were on was concerned? Was he removed from the car?

"A. He was removed from the car and took into the police department.

"Q. All right, sir, what was done with his car?

"A. It was parked on the back. It was brought from the scene and parked on the back.

"Q. Brought from where you had observed him up here on South Main Street and parked it in the parking lot there?

"A. That's right.

"Q. All right, sir, did you and Investigator Rainey later return to his automobile, that is this defendant's automobile with him, together with one or more other officers?

"A. We did sometime after he was brought back or brought down.

"Q. Do you have any judgment as to how long it was afterwards that you went out there?

"A. I would say approximately an hour or forty-five minutes.

"Q. What was the purpose of going out to his automobile if anything?

"A. To search his car for money.

"Q. To search his car for money, fruits of the crime?

"A. Right.

"Q. All right, sir, on the way out there —I am getting to where I am going, may it please the court. In the presence of you and Officer Rainey, Investigator Rainey, and on or more other officers did this defendant make any statement? Yes or no?

"MR. LINDSEY: If the court please, we are down.

"THE COURT: All right. Ladies and gentlemen, we are going to have to ask you to go back in the room until this question here is determined. Go back in that room, all you ladies may use the room over there, back over here if necessary.

"(The jury left the presence of the courtroom and the following took place.)

"THE COURT: Let's go a little bit further and connect it up. Show the jury is out.

"Q. (Mr. Stephens continuing) At that time and on that occasion in the police parking lot you had just testified that you and this defendant Mr. Shewey, Investigator Rainey, were going out for the purpose of searching his automobile?

"A. Right.

"Q. Did he on that occasion make a statement? Yes or no?

"A. Yes.

"Q. All right, sir. Now, at that time and on that occasion did you or Officer Rainey or anyone else in your presence or hearing ask him any questions?

"A. I did not and I didn't hear any questions asked.

"Q. All right, sir, would you say there was not a question asked, sir?

"A. I would.

"Q. At that time and on that occasion did you or Officer Rainey or anyone else in your presence or hearing offer him any hope of reward, any inducement, threaten him in any way to get him to make a statement?

"A. No.

"Q. What was the statement that he made?

"MR. LINDSEY: We object here, if the court please.

"THE COURT: Let me get it connected up. You had him at the police station?

"MR. STEPHENS: He was in custody.

"BY THE COURT:

"Q. And you were on your way from the police station out to his car?

"A. We went out to his car.

"Q. And you were on your way out there whenever this statement was made?

"A. They were in the process of searching the car. I believe Officer Rainey was looking through the car and the statement was made there. I was outside the car.

"Q. You hadn't asked this man anything?

"A. No, sir.

"Q. No one there had asked him anything about it pertaining to it?

"A. No, sir.

"Q. And no one had made any threats or anything else?

"A. No.

"Q. That was all done at the police station?

"A. Back of the police station.

"Q. Back of the police station and you had him there and his car was there?

"A. Right.

"THE COURT: All right."

Officer Rainey, who was also present at the time the alleged statement was made, was questioned by the court as follows:

"THE COURT: Wait just a minute. I want to ask him about something else. Now, before he made this statement, that you are being asked about, and there in your presence and at that time was anybody asking him anything?

"A. Not that I can recall, no sir.

"THE COURT: You were there, weren't you?

"A. Yes, sir, but I was also doing some photograph work at the time.

"THE COURT: You didn't hear anybody ask him any questions?

"A. No, sir.

"THE COURT: Now, the question seems to be what did he say in the statement.

"MR. LINDSEY: Whether it was voluntary, that is the question. That is the legal question that is involved, if something was said.

"THE COURT: What was said?

"A. As I recall, the subject mentioned that he did rob Tillis Grocery—or the grocery and that the money was in the rear seat of the police car that brought him to the police station. Now, this is the best of my recollection of exactly what he said.

"THE COURT: And at that time none of you asked him anything?

"A. I hadn't asked him anything.

"THE COURT: You nor anybody else had?

"A. No, sir.

"THE COURT: Hadn't been asked anything like that while you were out there?

"A. No, sir.

"THE COURT: And no one in your presence or at any time had asked him anything?

"A. No, sir.

"THE COURT: And you are telling me that the statement you say he made was not in response to any question by anybody?

"A. Not that I can recall, no, sir. Like I say, there were several officers there and someone could have asked the question. I didn't hear the question if they did.

"THE COURT: Are you saying not that you recall or not that you heard?

"A. Not that I heard.

"THE COURT: If that question was asked by anybody you didn't hear it?

"A. Right.

"THE COURT: All right."

■ The trial judge's conclusion that the accused's statement was voluntary is adequately supported by the facts. This determination was made after voir dire examination of the officers and the appellant outside the presence of the trial jury. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. We find no error in the admission of appellant's alleged statement under the above circumstances.

The judgment appealed from is, therefore, due to be and is hereby

Affirmed.

All the judges concur.