[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 278 
Appellants Oscar Peter Hobbs and Elijah Pickett were indicted in separate indictments by the Grand Jury of Baldwin County in July of 1980 for rape in the first degree. By agreement of the State and the defendants, the two were tried jointly in the Circuit Court of Baldwin County. The jury returned a verdict of guilty as to both defendants and both were sentenced to life imprisonment.
The jury returned separate verdicts as to each defendant and there was a separate judgment entry in each of the cases based upon the verdicts of the jury. This was proper. Ala.Dig.Crim.Law, Key No. 983.
Appellants contend that the trial court committed error in allowing the in-court identification of them by the prosecutrix after she had viewed them in a "showup" at the alleged scene of the crime just hours after the rape occurred. *Page 279 
On June 29, 1980, the prosecutrix and her fiance left Mobile, Alabama, where the prosecutrix lived, and went to the beach for the day in Gulf Shores, Alabama. They arrived in Gulf Shores at approximately twelve noon that day and remained on the beach until four or five p.m., then went to the Florabama Lounge. After drinking five or six beers the prosecutrix and her fiance left Gulf Shores at approximately six p.m. heading back to Mobile. The prosecutrix testified that, shortly after they left Gulf Shores, she fell asleep because she had worked a twelve hour shift the night before and became sleepy after drinking the beer. Her fiance continued to drive toward Mobile until he got to Daphne, Alabama, where he pulled off the road on Highway 98 and also went to sleep.
The prosecutrix testified that, when she woke up, she was in the back seat of another automobile and a man was attempting to rape her. She testified that, although she resisted and scratched the man, he was successful in raping her. There were two other men in the automobile. They drove the automobile to a deserted area near the beach in Daphne where the prosecutrix was raped by another man and was made to perform oral sex.
This ordeal lasted for one to two hours. The prosecutrix testified that, although the lighting was not very good, she was able to see them because of the closeness of the men and the length of time involved.
Following the rapes, the prosecutrix was thrown into the bushes and the men who raped her left. She made her way to the highway where she was picked up and taken to the Daphne Police Station. Upon arrival the prosecutrix told the police that one of the men that raped her had a beard and that they were in a light blue Cadillac. No other description was given. She told them the approximate location of where the rapes took place. The man who took her to the police station also told the police that he found the prosecutrix near the road to Paradise Beach off Highway 98 in Baldwin County. The Daphne police drove down to Paradise Beach where they found two men beside a light blue Cadillac. The prosecutrix's towel was in the back seat of the Cadillac. The prosecutrix was brought to the scene to view the two men. With appellants standing two to three yards from the prosecutrix who was still in the back seat of the police car, a light was shined on the appellants and the prosecutrix identified them as the men who raped her. She said that she was "one hundred percent" (100%) sure about the one with the beard but not as sure about the other one. This took place approximately one and one-half (1 1/2) hours after the rape.
At the trial the prosecutrix made an in-court identification of both appellants over counsel's objection. Appellants both claim that the trial court committed error by allowing the in-court identification because the prior showup identification was impermissively suggestive.
Whether a procedure used for an identification is so impermissively suggestive as to create a substantial likelihood of irreparable misidentification and violates due process depends on the totality of the circumstances. Stovall v. Denno,388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Simmons v. UnitedStates, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.
A showup is not inherently unfair, and it is settled law that prompt, on-the-scene confrontations are not constitutionally impermissible, but are consistent with good police work.Donahoo v. State, Ala.Cr.App., 371 So.2d 68; Robinson v. State,55 Ala. App. 658, 318 So.2d 354; Cornelius v. State, 49 Ala. App. 417, 272 So.2d 623. A showup by its inherent nature is, however, suggestive. Brazell v. State, Ala.Cr.App.,369 So.2d 25, cert. denied, 369 So.2d 31 (Ala. 1979); Weatherford v.State, Ala.Cr.App., 369 So.2d 863, cert. denied, 369 So.2d 873
(Ala. 1979).
Once a determination has been made that an identification procedure is suggestive, it must be determined whether the identification was reliable even though the prior confrontation was suggestive. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, *Page 280 34 L.Ed.2d 401. The totality of the circumstances must be considered in assessing the reliability of the identification. Factors to be considered in assessing the reliability of an identification were set out by the United States Supreme Court in Neil v. Biggers, supra. These factors, which include the opportunity of the witness to view the criminal act at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation, must be weighed against the suggestiveness of the identification. Neil v. Biggers, supra; Robinson v. State,45 Ala. App. 236, 228 So.2d 850.
In the case at bar the prosecutrix viewed the appellants at close range for a period of one to two hours. The prosecutrix testified that there was sufficient light to view both appellants during the rape as they were "right in my face."
The prosecutrix did not give a description of her attackers at the Daphne Police Station except to say that one had a beard and that they were in a blue Cadillac. However, within a short period of time after the prosecutrix came to the Daphne Police Station the appellants were found at the scene of the rape and the prosecutrix was taken there to view them.
When the prosecutrix viewed them, appellants were standing beside a blue Cadillac which contained the prosecutrix's towel. Testimony of the prosecutrix indicates that this confrontation took place approximately one and one-half hours after the rape.
At the confrontation the prosecutrix identified one of the appellants as "one hundred percent" (100%) sure. The statement as to the other one was that ". . . I can't be for sure . . ." While the degree of certainty of one of the appellants is less than one hundred percent (100%), it is not necessary that an identification be given with absolute certainty before allowing an in-court identification.
These factors must be weighed against the effect of the suggestive confrontation to determine the reliability of the identification. Reliability is the linchpin of the admissibility of identification testimony. Stovall v. Denno, supra.
Although a showup is inherently suggestive, it is also considered to be consistent with good police work when done promptly after the commission of the crime. Donahoo v. State, Ala.Cr.App., 371 So.2d 68; Robinson v. State, 55 Ala. App. 658,318 So.2d 354; Cornelius v. State, 49 Ala. App. 417,272 So.2d 623. In the case at bar the confrontation took place at the scene of the crime within approximately one and one-half hours after the crime. Two hours or less has been held to be an acceptable period of time between the crime and the confrontation. Donahoo v. State, supra.
Judge Burger, now Chief Justice of the Supreme Court of the United States, in Bates v. United States, 132 U.S.App.D.C. 36,405 F.2d 1104, stated:
 "There is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy.
. . . . .
 "[T]he police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. . . ."
Although the use of the showup is a suggestive identification procedure, it can also be a procedure which tends to enhance the reliability of the identification. Bates v. United States, supra; Carter v. State, Ala.Cr.App., 340 So.2d 94.
All of the factors considered and weighed against the effect of the suggestiveness *Page 281 
of the confrontation would indicate that the in-court identification was reliable and there was not a substantial likelihood of irreparable misidentification.
Appellants also claim that error was committed in allowing the testimony by the prosecutrix of the out-of-court identification. The record indicates the following testimony concerning the confrontation:
 "A. The police said to sit in the car and they were going to shine some lights on a couple of guys and they asked me if I could identify them.
"Q. And what did you say?
 "A. I said that I can't be for sure but the only one that I can identify is the guy with the beard for a hundred percent sure then and there.
"Q. Were you upset at that time?
"A. Yes.
 "Q. I will ask you again, after looking at these two Defendants, are you absolutely sure —
"MR. BOLTON: Your Honor — go ahead.
 "MR. WHETSTONE: Are you absolutely sure these are the two Defendants that participated in the rape?
"A. Yes.
 "MR. BOLTON: I object to this. This is repetitive to go back through the whole thing."
As can be seen from the record the question was "[A]re you absolutely sure these are the two Defendants that participated in the rape?" The only objection came after the answer to the question. Where a question is answered before an objection is made, the objection comes too late and the court's ruling will not be declared in error without a motion to exclude and an adverse ruling. Burlison v. State, Ala.Cr.App., 369 So.2d 844, cert. denied 369 So.2d 854 (Ala. 1979). Also, the objection made was that the question was repetitive. Objections to the admission of evidence are unavailing unless the appropriate grounds are stated. Rogers v. State, 53 Ala. App. 573,302 So.2d 547 (1974); Stringer v. State, Ala.Cr.App., 372 So.2d 378, cert. denied, 372 So.2d 384 (Ala. 1979).
During the trial an unsigned confession by appellant Hobbs and a signed confession by appellant Pickett were admitted into evidence over the objection of both appellants. Appellant Hobbs contends on appeal that the unsigned confession was transcribed in an unreliable manner and should not have been admitted into evidence.
Appellant Pickett, although his confession was signed, also claims that his confession was transcribed in an unreliable manner and should not have been admitted into evidence. Appellant Pickett further claims that the state failed to show that his statement was given voluntarily and that he knowingly and intelligently waived his constitutional rights.
Appellant Pickett's claim that his confession was not voluntarily made and that he did not knowingly and intelligently waive his rights against self-incrimination is based on the questioning of appellant Pickett at the Baldwin County Jail in Deputy Rizzo's office at approximately four p.m. on June 30, 1980. Chief Investigator Stewart was present along with Deputy Rizzo at the questioning. Investigator Stewart and Deputy Rizzo testified on voir dire and later before the jury that appellant Pickett was given his Miranda rights prior to being questioned. They also testified that appellant Pickett made a statement free from threat, coercion, or offer of reward or hope of reward.
Appellant Pickett took the stand and testified on voir dire and then later before the jury that during the questioning he was slapped and kicked and was not allowed to call an attorney. He also testified that he never made a statement but was asked to sign one, and he refused. He then testified that he was taken to the "dark room" where photographs were processed and choked with a chain until he signed the statement. He, however, later testified that the signature on the statement was a forgery. He also claims he was never apprised of his constitutional rights. No offer of evidence was ever made by appellant Pickett that he was ever seen by anyone in a cut, bruised or battered condition. *Page 282 
Chief Investigator Stewart and Deputy Rizzo both testified on voir dire and later before the jury that appellant Pickett's statement was reduced to writing by Officer Rizzo and was signed by appellant Pickett. Both Investigator Stewart and Deputy Rizzo's testimony is in direct conflict with that of appellant Pickett. Where the evidence on the circumstances surrounding a confession is conflicting on voir dire, the trial judge must decide on its admissibility. If the confession is admitted, controverted testimony for the accused goes to the jury on its credibility. Godfrey v. State, Ala.Cr.App.,333 So.2d 182; McBryar v. State, Ala.Cr.App., 368 So.2d 568, 573
cert. denied, 368 So.2d 575 (Ala. 1979). The trial court in this case heard the testimony of two witnesses that appellant Pickett was fully apprised of his constitutional rights and that appellant Pickett's confession was made and signed free of threats, coercion or offer of reward. The trial court made its decision after hearing the conflicting testimony and allowed the confession to go to the jury. Defense counsel was allowed to cross-examine and present evidence before the jury in an attempt to persuade the jury that the confessions were not voluntary. The trial court had sufficient evidence to support its ruling and its decision will not be overturned on appeal.Carter v. State, 53 Ala. App. 43, 297 So.2d 175.
Appellant Pickett also contends that he did not waive his constitutional rights because he is "semi-illiterate" and a "slow learner" and was unable to voluntarily and intelligently waive his rights. The only evidence of appellant Pickett's illiteracy or low mentality was testimony by him and his mother that, although he had gone to the twelfth (12th) grade in a "special school," he could only read on a fifth or sixth grade level. Appellant Pickett admitted he could read and write. No evidence was presented that appellant Pickett was illiterate or mentally incompetent. While an accused's intelligence and literacy are important factors to be considered in determining whether he intelligently and voluntarily waived his constitutional rights and made a confession, weak intellect or illiteracy alone will not render a confession inadmissible.Elrod v. State, 281 Ala. 331, 202 So.2d 539; Twymon v. State, Ala.Cr.App., 358 So.2d 1072; Arnold v. State, Ala.Cr.App.,348 So.2d 1092. It is for the trial court to determine whether appellant Pickett's level of literacy and intellect rendered the confession inadmissible and its decision will not be disturbed unless there is abuse of discretion. Elrod v. State, supra. Under the circumstances the trial court did not abuse its discretion in deciding that appellant Pickett voluntarily waived his constitutional rights.
Both appellants contend that it was improper to allow the confessions into evidence because they were transcribed in an unreliable manner. Deputy Rizzo transcribed the statements given by each of the defendants. Both of these confessory statements were admitted into evidence over the appellant's objection. After the transcription appellant Pickett signed the statement. Appellant Hobbs refused.
The fact that appellant Hobbs did not sign the statement does not render it inadmissible. "The law does not require that a confessory statement be signed by the defendant." McBryar v.State, supra, cert. denied, 368 So.2d 575 (Ala. 1979).
Deputy Rizzo testified as to the statement given by Hobbs that the written transcription did not contain everything said in the office but it did contain a transcription of everything that pertained to the rape. It is not required that a written confession or statement contain the entire confession or the entire conversation between the accused and the person to whom the confession was made. King v. State, Ala.Cr.App.,355 So.2d 1148, 1151. The testimony of Deputy Rizzo that the statement contained everything that pertained to the rape is sufficient to make the unsigned written transcription of appellant Hobbs' confessory statement admissible.
Appellant Pickett signed the transcription of his confessory statement made to Deputy Rizzo. A confession is not *Page 283 
inadmissible because it is not transcribed verbatim as related by the defendant if the transcription is substantially as related and affirmed by the prisoner as correct. Dennison v.State, 259 Ala. 424, 66 So.2d 552 (1953); Goldin v. State,271 Ala. 678, 127 So.2d 375 (1961); Price v. State, 52 Ala. App. 21, 288 So.2d 803 (1974). Additionally, Chief Investigator Stewart testified that the written transcription of appellant Pickett's confessory statement was an accurate transcription of the statement as related by appellant Pickett to Deputy Rizzo and himself.
State's Exhibit 1:
"VOLUNTARY STATEMENT
 "DATE June 30, 80 PLACE County Jail TIME STARTED 4:46 P.M.
 "I, the undersigned, Oscar Hobbs, am 21 (sic) years of age, having been born on 4-4-58, at Daphne. I now live at Daphne, Alabama.
 "I have been duly warned and advised by Joe Rizzo, a person who has identified himself as Deputy Sheriff, that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make, can and will be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during my questioning or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.
 "I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.
 "I declare that the following voluntary statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.
 "Townser stopped me and told me about this white girl in a small car parked on the highway.
 "Me and Padgett thought we would rob them so I drove down there and got the girl out.
 "The dude never woke up so we forced her in the back seat and I drove to Paradise Beach while Eddie Padgett raped her.
"When we got to the beach I raped her.
 "I guess we got mad because she wouldn't do as we wanted her to do so we punched and kicked her before throwing her in the bushes.
 "About two or two and a half hours later we went back down there to do it again and that's when the police caught us.
 "I have read each page of this statement consisting of 1 page, each page of which bears my signature, and corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.
 "This statement was completed at 5:12 p.m. on the 30
day of June, 1980.
"WITNESS: /s/ Robert F. Stewart
"WITNESS: /s/ Joe Rizzo
______________________________________________ Signature of person giving voluntary statement"
State's Exhibit 2:
"VOLUNTARY STATEMENT
 "DATE June 30, 1980 PLACE County Jail TIME STARTED 4:00 P.M. *Page 284 
 "I, the undersigned, Elijah Pickett, am 21 years of age, having been born on 2-1-59, at Mobile, Alabama.
I now live at Daphne.
 "I have been duly warned and advised by Joe Rizzo, a person who has identified himself as Deputy Sheriff, that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make, can and will be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during my questioning or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.
 "I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.
 "I declare that the following statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.
 "I was hitchhiking when I came up on a small car with 2 people in it. The girl had her legs hanging out of the window. Both were passed out.
 "I then got up with Oscar Hobbs and another dude and we went back to the car and took the girl out. We put her in Oscar's Cad. and drove down to the beach. They raped her first and then I raped her.
 "They beat on her for a while and left her laying on the beach.
 "We came back later about 2 hours and that's when the police caught us.
 "I have read each page of this statement consisting of 1 page, each page of which bears my signature, and corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.
 "This statement was completed at 4:30 p.m. on the 30
day of June, 1980.
"WITNESS: /s/ Joe Rizzo
"WITNESS: /s/ Robert F. Stewart
 /s/ Elijah Pickett
Signature of person giving voluntary statement"
Lastly, appellant Pickett contends that it was error for the trial court to refuse written jury charges numbered 9, 10, 12, 23, 27 and 30. Appellant Hobbs contends that it was error for the trial court to refuse charges numbered 19, 20 and 24.
Charges numbered 9, 10 and 23 were not hypothesized upon the evidence and were properly refused. Locklear v. Nash, 275 Ala. 95, 152 So.2d 421 (1963). Jury charge number 12 was properly refused as an incorrect statement of applicable legal principles. Kuczenska v. State, Ala.Cr.App., 378 So.2d 1182, certiorari denied, 378 So.2d 1186 (Ala. 1979). Charges numbered 19, 20 and 30 were properly refused because they were confusing and argumentative. McDonald v. State, 165 Ala. 85,51 So.2d 629; Lowe v. State, 54 Ala. App. 280, 307 So.2d 86 (1975).
Charges numbered 24 and 27 address the admissibility of a confession without independent proof of the corpus delicti, and charge 27 contained a misspelled word. The admissibility of a confession is addressed by the trial judge only while the credibility and weight to be given a confession are for the jury. *Page 285 
We have carefully searched the record for errors affecting the substantial rights of appellants and have found none. The judgment of conviction in each of these cases is affirmed.
AFFIRMED.
All the Judges concur.