Karl Wayne Thompson was indicted for attempted murder in violation of § 13A-4-2, Code of Alabama 1975, and robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. These cases were consolidated for trial and the jury found the appellant guilty of both offenses. Following a habitual felony offender hearing, the trial judge sentenced the appellant to life imprisonment in the penitentiary without parole.
At approximately 10:00 p.m. on November 8, 1982, Jack's Hamburgers in the Norwood section of Birmingham closed for the night. Four employees remained and engaged in the process of closing up. Shortly after closing, one of the employees, La Norris Sewell went out the back door to the dumpster. Sewell soon ran to the drive-in window where the two assistant managers, Ronnie Johnson and Ted Skinner, were standing. Sewell told them there were two men outside with a gun. Skinner let Sewell in the door and Johnson went and called the police. While Johnson was on the phone, the appellant put a gun to Johnson's head and told him to hang up. The appellant then went to the front and instructed Skinner and another employee, Jackie Howell, to help him get the money out of the registers.
The appellant's accomplice stayed in the back during this time with Sewell and Johnson. The accomplice took the money bag from the safe and then told Sewell, Skinner and Johnson to lie on the floor. The appellant and his accomplice then left Jack's through the back door. Immediately after the two left, shots were heard outside.
Officers Tommy Tutten and Billy Roberts of the Birmingham Police Department were on patrol in the Norwood area when they received a call to proceed to Jack's Hamburgers. When they arrived, they saw the appellant with a gun in his hand, standing at the door beside Howell, taking money out of the register. Tutten called for a back-up unit and he proceeded toward the back of the building while Roberts remained in the front. When Tutten got to the back of the building, he looked around the corner and saw the appellant standing there with his gun pointed at him. Tutten then saw the muzzle flash and felt pain in his right eye. Tutten fired several shots at the appellant and the appellant ran.
When Roberts heard the shots, he ran to the back of the building and saw the appellant running. He pursued the appellant and shot at him. About this time, the appellant dropped his gun but continued to run. When the appellant was eventually subdued by Roberts with the aid of Officer Robert Steadham, they noticed that he had received a gunshot wound to his right shoulder. Approximately $400.00 was found in his front pocket.
The bank bag containing approximately $600.00 was found in the area behind Jack's along with the Lugar .357 which the appellant had dropped.
 I
Immediately after the appellant was subdued by the two police officers, he was taken to Cooper Green Hospital for treatment to his injuries. At approximately 12:30, Mike Coppage, a detective for the Birmingham Police Department, arrived at the hospital. Before entering the appellant's *Page 779 
room, he asked a doctor and a nurse if the appellant had been given any medication which would affect his mental capabilities or would render him incapable of giving his voluntary consent to a statement. Both told Coppage that the appellant had not received any medication of this type. When Coppage entered the appellant's room, he advised him of his Miranda rights. Coppage then told him of the nature of the charges against him and asked him if he wanted to talk about the incident. The appellant stated that he did understand his constitutional rights and would talk to Coppage. The appellant then made a statement which was taped by Coppage. Coppage testified that no threats, promises, hopes of reward or other inducements were made or offered to the appellant in order to obtain the statement.
The appellant now objects to the admission of this statement on two grounds.
First, Coppage, as well as the appellant's physician, stated the appellant was in some pain at the time the statement was taken. However, both witnesses stated the appellant could talk and carry on a normal conversation. The appellant was able to answer questions and seemed to understand what was going on.
Secondly, the appellant asserts he felt threatened to give a statement because of the number of the police officers at the hospital. Coppage made it clear that the appellant was not threatened or intimidated, and, in fact, testified that only he, an orderly, and one other officer were in the room when the statement was given by Thompson.
The admissibility of a confession, over the challenge of its voluntariness, is to be determined by the trial judge in the exercise of his sound discretion. Free v. State, 455 So.2d 137
(Ala.Crim.App. 1984), cert. denied, [Ms. 83-965, July 27, 1984] (Ala.); Womack v. State, 435 So.2d 754 (Ala.Crim.App.), affirmed, 435 So.2d 776 (Ala. 1983).
The contentions which the appellant makes go to the credibility and weight of this confession, not to its admissibility. This court will not overturn a decision by the trial judge on the admissibility of a confession unless it finds an abuse of his discretion. Shewey v. State, 48 Ala. App. 730, 267 So.2d 520 (1972); Bills v. State, 49 Ala. App. 726,275 So.2d 706 (1973). There is no abuse shown in this record.
The State fully met its burden of proof and established the voluntary nature of the appellant's confession. Therefore, this confession was properly admitted into evidence.
 II
During the trial, a videotape of the events of the night of November 8, 1982, at Jack's Hamburgers was shown to the jury. The appellant asserts a proper predicate for its admission was not laid and, therefore, this evidence should have been suppressed.
Arty Chiles, the owner of Chiles Alarm Company, testified that he controls and maintains the security system for Jack's Hamburgers in Norwood, which includes a video monitor system. This system includes four cameras that take pictures which are recorded on video tape. Chiles checks the system on a semi-monthly basis to make sure it is operating properly, and changes the tape. He personally instructs the employees concerning the operation of the system. Chiles stated that a tape may not be altered, it can only be played or erased. He checked the system on November 9, 1982 and found it was in proper working order.
Ronnie Johnson testified that he checked the video system when he came to work on November 8, 1982 and found it was operating properly. Further, he checked it every hour thereafter until the robbery occurred.
Godfrey Johnson, the area supervisor for Jack's Hamburgers, was called to the scene immediately after the robbery took place. Shortly after he arrived, he checked the video system and it was working properly. He removed the tape from the video *Page 780 
machine and gave it to the evidence technician of the Birmingham Police Department.
Dave Higgins, the evidence technician, testified he received the tape from Johnson on the night of November 8, 1982, and gave it to Officer Mike Coppage the following morning.
Coppage kept the tape in his possession until he brought it to court on the day of the trial.
The appellant makes several allegations as to why the tape should not have been admitted into evidence. The first of those allegations is that one of the four cameras was not operating on the night of November 8, 1982. Three of the cameras were working during this time and these recorded the events of that night. Ted Skinner, who was present when the tape was being made and who viewed the tape, stated the tape truly and accurately depicted the scene at Jack's and the events of the night of November 8, 1982. Therefore, it was unnecessary for all four cameras to be in operation and it is irrelevant that one of them was not working.
The second allegation the appellant makes concerns the difficulty of the identification of the man portrayed in the tape as the appellant. This fact does not preclude the tape's admission into evidence. Whether the man portrayed on the tape was, in fact, the appellant, was a question for the jury to determine.
Thirdly, the appellant alleges there is some discrepancy about the time and date in which the tape was recorded. The time and date should have been 10:15 p.m., November 8, 1982, but the date/clock registered 5:45 a.m., April 14, 1982. We do not feel this justifies the tapes exclusion from evidence. There was substantial and sufficient testimony that the tape which, in fact, was recorded during the time of the robbery was the one which was shown to the jury.
Furthermore, it is clear to this court that an unbroken chain of custody was shown and that the tape had not been altered from the time it was recorded until shown in court. Clark v.State, 451 So.2d 368 (Ala.Crim.App. 1984).
The admission of the tape into evidence was therefore proper.
 III
During the noon recess of the first day of trial, several jurors were waiting for an elevator when the appellant, wearing handcuffs, was escorted from the courtroom. Although it is not clear from the record if any of the jurors saw this event, the appellant claims a mistrial should have been granted.
As the State points out in its brief, this issue has been addressed by this court and decided adversely to the appellant. In Evans v. State, 338 So.2d 1033 at 1037 (Ala.Crim.App. 1976), we held:
 ". . . [I]t is not ground for a mistrial that an accused felon appears in the presence of the jury in handcuffs when such appearance is only a part of going to and from the courtroom. This is not the same as keeping an accused in shackles and handcuffs while being tried. Rhodes v. State, 34 Ala. App. 481, 41 So.2d 623 [1949]."
Therefore, the trial judge correctly denied the appellant's motion for a mistrial on this basis.
 IV
The appellant objects to the trial judge's instruction to the jury on reasonable doubt. He claims it was misleading and that the jury should have been given further instructions.
After a careful review of the court's instruction to the jury, we find that his instructions were more than adequate. He thoroughly explained to the jury that the defendant is presumed to be innocent at all times and the burden of proof is on the State to prove his guilt beyond a reasonable doubt and that the burden of proof never shifts to the defendant. This court finds no error in the trial court's instruction to the jury. *Page 781 
 V
The appellant challenges the constitutionality of § 13A-5-9, Code of Alabama 1975. As the appellant recognizes in his brief, this issue has been reviewed before this court numerous times and has been decided adversely to the appellant. The Habitual Felony Offender Act does not constitute cruel and unusual punishment, is not violative of due process of law and is not an ex post facto law. Watson v. State, 392 So.2d 1274
(Ala.Crim.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981);Williams v. State, 393 So.2d 492 (Ala.Crim.App. 1981); Johnsonv. State, 398 So.2d 393 (Ala.Crim.App. 1981); Smith v. State,401 So.2d 251 (Ala.Crim.App. 1981), cert. denied, 401 So.2d 257
(Ala. 1981); Dozier v. State, 415 So.2d 3 (Ala.Crim.App. 1982);Seritt v. State, 401 So.2d 248 (Ala.Crim.App. 1981), cert. denied, 401 So.2d 251 (Ala. 1981); Seritt v. Alabama,731 F.2d 728, 735 (11th Cir. 1984).
 VI
Two of the appellant's prior felony convictions which were introduced at the habitual offender hearing were entered on the same day and he was given concurrent sentences in those cases. He claims those two convictions should be considered as one conviction.
This issue has been decided in Watson, supra. Even though the appellant received concurrent sentences in these two cases, there are two convictions for purposes of the Habitual Felony Offender Act. The appellant pled guilty to both offenses and he could have received two sentences to run consecutively. SeeHopper v. State, 420 So.2d 853 (Ala.Crim.App. 1982); Seritt v.State, 401 So.2d 248 (Ala.Crim.App. 1981); cert. denied,401 So.2d 251 (Ala. 1981); Seritt v. Alabama, 731 F.2d 728, 735
(11th Cir. 1984).
The appellant's convictions were properly considered as two prior felony convictions.
 VII
Lastly, the appellant contends that one of his convictions was improperly considered at the habitual offender hearing. He alleges he was not advised as to the range of punishment for the offense when he pled guilty and, therefore, his plea was uninformed.
As this court stated in Jones v. State, 431 So.2d 1367
(Ala.Crim.App. 1983):
 "A plea of guilty is a conviction itself. This is not the proper forum for attacking a prior conviction used during a Habitual Offender hearing. The proper forum for attacking the validity of a prior conviction would be by a petition for a writ of error coram nobis. See Mayola v. State, 337 So.2d 105
(Ala.Crim.App. 1976)."
The State gave adequate proof of the appellant's convictions and that they were proper convictions. Each conviction was properly considered by the trial judge during the Habitual Felony Offender hearing.
For the reasons stated above, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.