228 So.2d 859

**Robert Eugene TADLOCK, alias**

**v.**

**STATE.**

**3 Div. 5.**

Court of Criminal Appeals of Alabama.

Oct. 21, 1969.

Rehearing Denied Nov. 25, 1969.

L. H. Walden, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The indictment charged that appellant did "unlawfully, wilfully, and feloniously possess, sell, furnish, or give away, opium, a narcotic drug," etc. Trial resulted in the following verdict: "We, the Jury, find the defendant guilty." The Court adjudged defendant "guilty as charged in the indictment," imposed a sentence of ten years and assessed a fine of $20,000

Defendant was arraigned and entered a plea of not guilty. It is asserted in brief that the plea was entered with the understanding on the part of the state and the court that other pleas and motions could be filed later. This is not reflected in the record. However, after arraignment defendant filed what is termed a motion to dismiss the indictment. The motion was denied.

Title 15, Section 249, Code of Alabama, 1940, provides:

"When offenses are of the same character, and subject to the same punishment, the defendant may be charged with the commission of either in the same count in the alternative."

Title 22, Section 255(b), Code, supra, fixes the punishment for possession of opium at not less than two nor more than ten years, and in addition may be fined not more than twenty thousand dollars.

Subsection (c) of Section 255, supra, fixes the punishment for selling, furnishing or giving away of opium at a sentence of not less than five nor more than twenty years, and in addition may be fined not more than twenty thousand dollars.

In Goldman v. State, 26 Ala.App. 407, 161 So. 261, the court held it reversible error to overrule a demurrer to an indictment charging in one count offenses not of the same character and subject to the same punishment.

■ The state now insists the motion to dismiss, filed after arraignment and after the plea of not guilty, came too late. No objection, by motion to strike or otherwise, was made by the state on the trial. The motion raising this point was well taken and should have been granted. The question was also presented by the motion for a new trial. Brandies v. State, 44 Ala.App. 648, 219 So.2d 404. Thus ruling requires a reversal of the cause, but in view of the likelihood of another trial, other questions presented will be considered.

Defendant moved to suppress the evidence. The following testimony was presented on the hearing of said motion: Sergeant Arnette of the Montgomery Police Department testified that, on August 1, 1967, an informer, whom he had known for twenty years and who had previously on numerous occasions given him reliable information which had proved to be accurate and had resulted in arrests and convictions, told him defendant was at the home of a known drug addict; that he had in his possession narcotics which he was trying to sell, that he was about to leave town, and described the automobile defendant was driving. It was about 5:45 in the afternoon and there was no one at headquarters with authority to issue warrants of arrest.

Immediately after receiving this information witness went to the address given him and saw Tadlock driving away in the automobile described by the informant. The officer followed the car for several blocks. Defendant was driving between thirty-five and forty miles per hour in a twenty mile zone. Witness pulled defendant over, placed him under arrest "for speeding and running that fast down Madison, and turned him around and shook him down." A bottle containing Dilaudid tablets was found on Tadlock's person. His automobile was searched, but nothing was found in the car. The officer had no warrant for an arrest or search. The witness stated he arrested defendant for speeding and for possession of narcotics and denied the arrest was made as a pretext to search. He testified on cross examination that in speeding cases it was customary not to search the offender, but merely to ask for his driver's license and give him a ticket to appear in court. His original purpose was to arrest defendant for possession of narcotics and he would have arrested him for possession of narcotics whether he was speeding or not. Appellant readily produced his driver's license when he asked for it.

Information furnished by the informant was relied upon by the state to establish probable cause for arrest and search. Sergeant Arnette refused to give the informant's name. Defense counsel moved the court to require that defendant be supplied with this information. The motion was denied. Appellant argues the trial court committed reversible error in not requiring the state to identify the informant.

■ Officer Arnett stated the informant told him the name and address of the alleged narcotics addict where the defendant could be found and that he mentioned specifically Tadlock's name; that he described Tadlock's automobile as a green and white Comet and said defendant was about to leave town; that the informant came to police headquarters about 5:45 and that the witness went immediately to the

address given him and saw the defendant driving away from this house in an automobile of the same description given him by the informant. That he had received information from this person on numerous occasions which later checked out to be true and which resulted in arrests and convictions, naming specific instances. We find no error in the court's refusal to require the state to disclose the informer's identity. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; Dixon v. State, 39 Ala.App. 575, 105 So.2d 354; Parsons v. State, 251 Ala. 467, 38 So.2d 209; State v. Burnett, 42 N.J. 377, 201 A. 2d 39.

On the basis of the circumstances shown we are of opinion there was probable cause to sustain the arrest and the search of defendant's person. McCray v. Illinois, supra; Clenny v. State, 281 Ala. 9, 198 So.2d 293.

Sergeant Arnette turned over to Detective Humphrey of the narcotics squad the bottle of pills taken from defendant's person. Detectives Humphrey and Headley testified the pills were mailed to the State Department of Toxicology at Auburn.

Dr. C. J. Rehling, State Toxicologist, testified he conducted a chemical analysis of the tablets and identified them as "Dilaudid, one-sixteenth grain which is a dihydro-morphinone which is the chemical compound" which is a "derivative of opium." Derivative of opium means "a substance that is manufactured from opium itself; derived from it by various chemical processes."

On cross examination Dr. Rehling testified dilaudid is "a derivative of morphine which is a derivative of opium;" that opium is dried juice obtained from the poppy seed capsule. Dilaudid is not contained in opium but it is made from the opium. It is a separate substance isolated from opium. On redirect examination he stated that dilaudid is a derivative of opium.

It is our opinion the court properly denied defendant's motion for a directed verdict on the ground the indictment charged possession of opium and the evidence showed defendant possessed a derivative of morphine which is a derivative of opium.

The state's witnesses testified that after his arrest defendant was taken to police headquarters. After he was advised of his constitutional rights he told police he had more drugs at a local motel. The state insists defendant voluntarily signed a written consent for a search of his room. Defendant insists the search took place after the officers promised him drugs to ease his pain and promised not to use anything found in the room against him. According to the officers defendant accompanied them to the motel room and took a little brown suitcase from under the bed. Officer Humphrey testified the suitcase contained "Paregoric, which was ninety-eight bottles. Percodan and Alvodine, Leritiene, Benzedrine, Demoral, Codiene Sulfate, Dolophine Hydrochloride and Ipecae and opium which was a bottle of powder." This witness stated some of the bottles were full and some were empty. Photographs of the bottles were introduced in evidence.

On cross examination Officer Humphrey testified that no test was made of any of the articles found in the suitcase; that he had no way of knowing what the bottles contained except for the labels and that he was not stating to the jury that any of them contained narcotics. There was no other evidence with respect to the contents of the bottles allegedly taken from defendant's room. The bottles were not available at the trial. The witness stated: "We kept them up until this last term of court and it was my understanding that the case had been done away with and we destroyed them."

State's Exhibit 5, the letter sent by the Montgomery Police Department to the Department of Toxicology with the tablets taken from defendant's person, recites: "Please examine to determine drug con-

tent. The defendant was charged with illegal possession of Dilaudid. *Numerous other brands of drugs were found in a suitcase in the defendant's motel room, but they are not relative to the charge.*"

Dr. Rehling was permitted to testify that Percodan is a derivative of opium; that he was not acquainted with Alvodine;" that Homatropine is a derivative of Atropine which comes from Belladonna, which does not come from opium; that Demeroral is a synthetic narcotic; that Paregoric is a solution of opium; that Leritiene is a true narcotic; that Hycodan contains opium; that Dolophine is a true narcotic; that Ipecac and opium is a mixture of Ipecac and opium.

 An essential element of the crime of possession of opium is the character of the drug. There is no proof establishing that the bottles allegedly taken from defendant's room contained opium or any other narcotic drug. All of the testimony relating to the result of the search of defendant's motel room was highly prejudicial. The repeated objections to the admission of this evidence should have been sustained.

The judgment is reversed and the cause remanded.

Reversed and remanded.