**32**

268 So.2d 498

**Willie Clyde PARKS**

**v.**

**STATE.**

**4 Div. 71.**

Court of Criminal Appeals of Alabama.

Aug. 15, 1972.

Rehearing Denied Sept. 12, 1972.

V. Cecil Curtis, Phenix City, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

ALMON, Judge.

Willie Clyde Parks was convicted of unlawful possession of narcotics and his punishment was fixed at two years in the penitentiary. The indictment charged that he unlawfully possessed one bottle containing opium alkaloid, twenty ampules containing isonipecaine and one hundred tablets containing morphine.

The evidence tended to show that on the night of February 18, 1970, the Phenix City police stopped an automobile in which the appellant was driving. He was placed under arrest for driving while intoxicated.

Officer Donaldson testified that while attempting to remove the car from the road, he and his companion noticed two large paper sacks, approximately one foot high, on the floorboard of the automobile immediately behind the driver's seat. One of the sacks was open and Officer Donaldson observed that it contained small bottles and boxes. The defendant was asked to get out of the automobile and present his identification. The two police officers, without further investigation, then called for detectives.

When the detectives arrived both occupants were outside the automobile. Detective Elkins testified he looked in the car window and observed, by the use of a flashlight, the word "narcotic" labeled on the caps of some of the bottles in the open sack. He then asked Officer Donaldson to place the defendant under arrest for possession of narcotics. Detective Elkins removed the sacks from the automobile and turned them over to Captain Williams, who testified that he removed two boxes and a · bottle from the sacks and delivered them to Dr. James Small of the Alabama State De-

partment of Toxicology and Criminal Investigation.

Dr. Small testified the boxes and bottle contained narcotics of the types described in the indictment.

It is argued that the items taken from appellant's automobile were illegally seized and were therefore inadmissible in evidence. The question of an illegal search and seizure was decided adversely to appellant in the companion case of Parks v. State, 46 Ala.App. 722, 248 So.2d 761. The Parks case was reversed because the appellant was merely a passenger and there was no proof that he was aiding and abetting in the illegal possession of the drugs and no evidence was introduced to show that he exercised any control or dominion over the automobile in which the illegal drugs were found. No such problem exists in the present case as the appellant was driving the automobile in question.

The State introduced into evidence, over objection, the paper sacks and the contents of the sacks taken from the automobile in which appellant was driving. The sacks were properly identified before their introduction; however, there was no identification of the contents of the sacks. For a better understanding of how this occurred we quote from the record:

"MR. FERRELL: Do I understand the Court is admitting the contents of the sacks 1 and 2 at this time?

"THE COURT: The qualifications all the way along have been both to the sack and the items that were contained within the sack. The sack and the items which were found in there were offered as the State's Exhibits 1 and 2, as I understand it.

"MR. BENTON: Yes, sir.

"MR. FERRELL: If the Court intends to admit these items offered, we would like to take this witness on voir dire. We request that we be allowed to take this witness on voir dire before these items are introduced or admitted.

"THE COURT: That would be for the purpose of which aspect of admissibility?

"MR. FERRELL: All respects.

"THE COURT: Those are directed to admissibility only then? In that event, the motion would be overruled and the Exhibits 1, 2, 3, and 4 would be admitted.

"MR. FERRELL: To which the defendant excepts.

"THE COURT: Let the exception be noted. Let it specifically show Exhibit 1 has certain contents which have not been identified, and Exhibit 2 has certain contents which have not as yet been identified.

"Q. Captain Williams, with regard to the items that you turned over to Mr. Small of the Toxicology Department, would you state again what those were, please, sir, as far as the labels and the condition at the time you turned them over to him?

"A. I picked up three of the plainly marked narcotics, Morphine, Opium, and Demoral; them three I knew was narcotics, hard narcotics.

"MR. FERRELL: We object to that.

"THE COURT: Sustained.

"Q. Just tell what you saw and what you did with what you saw, please, sir.

"A. I picked one small green box with ten tablets in it, and one-fourth of a pint bottle of liquid Opium—that wasn't all the way full, between a half amd three-quarters full.

"Q. Was the seal on the bottle broken?

"A. On that one it was. On the other two the narcotics seal was not broken.

And on the other bottle was 'Demoral.' The seal had not been broken on it.

"Q. These are the three items that you have referred to as having been taken out of these sacks referred to as States Exhibits One and Two.

"A. That's right. ·

"Q. Now, other than those three items are those sacks and contents as they were at the time you received them?

"A. That's right."

From a reading of the record it is inferrable that the contents of the sacks were bottles and boxes similar to those which were sent to the State Toxicologist in Auburn. These bottles and boxes above referred to were never tested for narcotic content, nor were they identified by any of the witnesses.

This situation is very much like that in Tadlock v. State, 45 Ala.App. 246, 228 So. 2d 859. There the defendant was arrested for having illegal drugs on his person. After he was in custody he made known to the police that he had more drugs at a local motel. Later the police secured ·from the motel room a suitcase containing numerous bottles, some of which contained pills and some of which did not. Photographs of these bottles were introduced into evidence. No tests were made of any of the articles found in the suitcase and there was no other evidence with respect .to the contents of the bottles taken from defendant's room. In reversing the judgment of conviction this Court stated:

"An essential element of the crime of possession of opium is the character of the drug. There is no proof establishing that the bottles allegedly taken from defendant's room contained opium or any other narcotic drug. All of the testimony relating to the result of the search of defendant's motel room was highly prejudicial. The repeated objections to the admission of this evidence should have been sustained."

■ On principle, we perceive no substantial difference between the situation in *Tadlock,* supra, and that here. Consequently, it was error to admit into evidence the unidentified contents of the sacks. Furthermore, we cannot say that the admission of this evidence was harmless error.

■ The jury might well have reasoned that the unidentified items in the sacks were additional quantities of illegal drugs and we cannot say that this did not have a prejudicial effect. A defendant is bound only to defend against the allegations of the indictment.

Appellant further contends that the introduction into evidence of a pair of gloves, a flashlight and a walkie talkie found in the glove compartment of the automobile in which appellant was driving was improper in that it tended to show the commission of another crime; to-wit, burglary.

Since there must be a new trial in this case, we pretermit a consideration of whether the introduction of these items was prejudicial. We hasten to point out, however, that we fail to see the relevance of this evidence.

The judgment appealed from is due to be reversed and the cause remanded for a new trial.

Reversed and remanded.

CATES, P. J., and TYSON and HARRIS, JJ., concur.