286 So.2d 899

**Willie Lee HARDY, Jr.**

**v.**

**STATE.**

**6 Div. 558.**

Court of Criminal Appeals of Alabama.

Dec. 4, 1973.

Holliman & Hardy, Bessemer, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Alston Keith, Jr., Sp. Asst. Atty. Gen., Selma, for the State.

TYSON, Judge.

The indictment charged Willie Lee Hardy, Jr., with the first degree murder of one Carey James Morgan by shooting him with a pistol. The Jury found the appellant guilty of murder in the second degree, and its verdict and judgment fixed punishment at twelve years imprisonment in the penitentiary.

State's witness Alfred Phillips testified that on the night of Saturday, July 22, 1972, he observed the appellant standing in front of a poolroom on First Avenue in the City of Bessemer arguing with the deceased, Carey James Morgan, whose nickname was "Blood," over some money. Phillips testified that he heard the appellant state to Morgan that he was going to get "his damn money" away from Morgan, and that he appeared to be very mad as they were arguing loudly.

Witness Calvin Olds testified that the appellant, Willie Hardy, the deceased, Carey Morgan, and himself, got into the appellant's car about 10:30 on the evening of July 22, 1973. He stated that the appellant and the deceased, Morgan, whose nickname was "Blood," were arguing over who had beaten the other in pool. They began rid-

ing away from the downtown area of Bessemer, toward Fairfield, that he was seated on the rear seat, that Hardy was driving, and the deceased, Morgan, was seated on the passenger's side. Suddenly, the appellant pulled his car over, got out, and came around in front of the car with a .38 caliber pistol in his hand. He told them to get out, that as Olds was getting out of the car he saw the appellant fire his pistol at Morgan, and Olds ran. He said that Morgan was unarmed. Olds ran into some bushes, and while there he heard two more shots. He then saw the appellant get back into his automobile and drive away.

Olds further stated that the following day the appellant, accompanied by two companions, Eugene West and Phillip Jackson, came by his house, and that he went "riding around" with them.

Over the objection of the defense, Olds testified that they were looking for the deceased's wife, whose nickname was "Puddin," that he overheard Jackson state to Hardy, "There's old Puddin. She talked too much and I've got to go talk to her," and that later he heard that she was dead.

Eugene West testified that on Saturday, July 22, 1973, he saw the appellant standing in front of a poolroom on First Avenue, arguing with the deceased, Carey Morgan, whose nickname was "Blood." He stated that the next day the appellant, Calvin Olds, and Phillip Jackson came by in the appellant's car, that he rode around with them, and that they passed Morgan's wife walking down Caroline Avenue. He stated that later Olds was put out of the car, but that he was in the car with the appellant and Jackson when they went up Alabama Avenue and parked in an alley. Jackson got out of the car after having asked the question, "Do you know where she's at?" A short time later, he heard a sound like a shot, and Jackson returned to the car. Upon being asked by Hardy, "Did you get her," Jackson replied, "Yes, I hollered Hey and blowed her head off." This testimony came in over the objection of appellant.

On redirect examination, West testified that after Jackson went down the alley in the direction of "Puddin," the appellant made the statement, "He hoped he would get her because they already got rid of one Uncle Tom and wanted to get rid of the other one."

The State toxicologist stated that the cause of Carey Morgan's death was two wounds in his chest by .38 caliber pistol slugs.

I

The appellant argues that the admission into evidence of the statements pertaining to the shooting of the deceased's wife, "Puddin," which occurred on the day following the death of her husband, was reversible error.

In Mason v. State, 259 Ala. 438, 66 So. 2d 557, 42 A.L.R.2d 847, we find:

"The general rule in Alabama is that evidence of distinct and independent offenses is not admissible in the trial of a person accused of a crime. Brasher v. State, 249 Ala. 96, 30 So.2d 31; Harden v. State, 211 Ala. 656, 101 So. 442; Weatherspoon v. State, 36 Ala.App. 392, 56 So.2d 793; Baker v. State, 19 Ala. App. 437, 97 So. 901, cert. denied 210 Ala. 320, 97 So. 903."

In Gassenheimer v. State, 52 Ala. 313, we find the following statement:

". . . There are other exceptions, which, if necessary to classify, would be found perhaps to range themselves under these heads: when the offence charged and the offence proposed to be proved are so connected that they form part of one transaction; when it is material to show the intent with which the particular act charged as criminal was done, evidence of another similar act, though it was in itself a criminal offence, may be given; when it is necessary to prove a

motive for the criminal act imputed, and there is an apparent relation or connection between that act and other criminal acts committed by the accused; when it is necessary to prove the identity of the offender, or of an instrument used in committing the offence. . . ."

In Harden v. State, 211 Ala. 656, 101 So. 442, it was said:

"Motive and intent are involved in homicide cases. These are not the same in law. 'Intent' is the ripened purpose to effect a result; while 'motive' is the moving power which leads the mind to desire the result and form the purpose. The intent must exist in all cases. If a crime is clearly shown to have been committed by the accused, as in case of one intentionally and without cause striking a deadly blow with an axe, the question of motive would be of little importance. But where the direct evidence is in conflict as to whether the accused did the act, or is partially or wholly circumstantial upon that issue, the question of motive becomes a leading inquiry.

"In such case if there is any evidence tending to support a reasonable inference that the homicide was committed to conceal another crime, evidence of such other crime is admissible.

"Wide latitude is given in search of a real motive to connect the accused with the killing. However, inconclusive may be the evidence standing alone, if it explains other circumstances tending to show guilt, it should go to the jury as a circumstance to be weighed with that caution which should always obtain in passing upon circumstantial evidence. . . ." [Cases cited.]

■ Where, as here, the evidence in question is partly direct and partly circumstantial, the question of motive is a matter of very material concern. Harden v. State, supra, and cases cited.

As observed in Jarrell v. State, 35 Ala. App. 256, 50 So.2d 767:

"In the case of Earnest v. State, 21 Ala. App. 534, 109 So. 613, 614, this court said: 'As to showing a motive for the commission of an offense, the law says it is not necessary in order to prove the crime; but evidence of motive is always admissible. In other words, it is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense. It may spring from the lust of gain, or the gratification of an unlawful passion, from animosity, ill will, hatred, or revenge. The extent or magnitude of such motive, whether great or small, is also a proper inquiry. The rulings of the court upon this subject are free from reversible error.' "

■ Moreover, the evidence indicates that the shooting the following day of the deceased's wife, "Puddin," was in furtherance of a common plan or scheme, which was intended to carry out a part of the appellant's ruthless ulterior purpose to sacrifice the lives of both of his victims. Since this was also one of the State's theories in tendering the evidence in question, such was properly admitted under Hawes v. State, 88 Ala. 37, 7 So. 302, and cases cited therein.

■ Further, such evidence of the shooting of the deceased's wife the following day, and statements made at that time by the appellant, were also properly admitted as bearing upon a conspiracy in which the appellant and Jackson were the perpetrators. In addition, such were properly admitted as bearing upon the question of an effort to prevent detection. Miller v. State, 130 Ala. 1, 30 So. 379; Powell v. State, 219 Ala. 557, 123 So. 34.

It is clear, therefore, that the trial court properly admitted the statements of the witnesses pertaining to the death of the deceased's wife the following day. Fuller v. State, 269 Ala. 312, 113 So.2d 153; Vincent v. State, 231 Ala. 657, 165 So. 844.

## II

Appellant argues that the search of appellant's automobile, and the seizures made therefrom, on August 1, 1972, were unlawful in that there was no search warrant, and that such search was not made contemporaneously with the arrest of the appellant.

The record discloses that the appellant was arrested on the night of July 31, 1972, by Sergeant Jones and Sergeant Franklin, who brought him to police headquarters. He was arrested at the Gatewood Cafe, and his car was taken that night to Jim Smith's Wrecker Service where it was impounded. The search of the appellant's vehicle took place the following day and was conducted by Police Lieutenant Pace at Smith's garage. A number of items were taken from the vehicle, including a ring found in the glove compartment, which was subsequently identified as belonging to the deceased, Carey James Morgan.

Sergeant Kenneth D. Goodwin testified that prior to the search, he questioned the appellant at police headquarters in the presence of Lieutenant Pace and Sergeant Williamson. Prior to any questioning, however, Sergeant Goodwin testified that he fully advised the appellant of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3rd 974. The record itself also discloses that a full "pre-Miranda" predicate was also laid, both of these matters having been inquired into by the trial court outside the presence of the trial jury. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908.

In laying this predicate, the record discloses the following:

"Q (BY MR. HOLLIMAN) Who was present when Mr. Hardy gave you his permission to search his automobile?

"A Lieutenant Pace and Sergeant Williamson.

"Q How was the question put?

"A I told him—this is the best I recall, I told him that we would like to search his car for any evidence that might be involved in the killing of Carey Morgan, who everybody knew as Blood, and that he didn't have to let us search the car if he didn't want to.

"Q Did you indicate that you were trying to find any evidence on anybody else, or just evidence against him?

"A I told him if we found anything that linked him to it, that it could be and would be used against him.

"Q Was he placed under arrest at that time?

"A He was placed in jail while I was off duty.

"Q He was under arrest before you got there?

"A Yes, sir.

"Q How long had he been under arrest?

"A Sometime during the latter part of the previous evening."

We have carefully examined this record and find the State properly established the appellant's consent to search his automobile. Duncan v. State, 278 Ala. 145, 176 So.2d 840, and cases cited therein.

It is true that the appellant did indicate to the officers that he would not sign a "waiver of his rights," until he had consulted an attorney. However, the appellant's consent to the search in the case at bar is not controverted in the record, and we are of the opinion that the trial judge's conclusion that such was voluntarily given is adequately supported by the facts. Shewey v. State, 48 Ala.App. 730, 267 So. 2d 520; Bills v. State, 49 Ala.App. 726, 275 So.2d 706. Padgett v. State, 45 Ala.App. 56, 223 So.2d 597, cert. den. 284 Ala. 732, 223 So.2d 603.

## III

At the conclusion of the trial court's extensive oral charge, the appellant an-

nounced, "Satisfied." The court then gave seven written charges as requested.

Refused charges 1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, and 17, are affirmative in nature, and, therefore, properly refused under the evidence in this cause. The remaining refused charges, some eleven in number, were either incorrect statements of applicable law, or unduly emphasized the appellant's version of the facts, and, therefore, were invasive of the province of the trial jury, or were fully and substantially covered by the trial court's oral charge and the given charges. Such refusals were therefore proper. Title 7, Section 273, Code of Alabama 1940.

We have carefully examined this record, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment is therefore due to be and the same is hereby

Affirmed.

All the Judges concur.